19 F.3d 40
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
William R. TRIPP, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 93-3543.
 United States Court of Appeals, Federal Circuit.
 Feb. 10, 1994.
 
 Before RICH, NEWMAN, and ARCHER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 William R. Tripp appeals from a decision of the Merit Systems Protection Board (MSPB or board), No. AT-831E-93-0319-I-1, affirming the decision of the Office of Personnel Management (OPM) denying Tripp's application for disability retirement on the basis that it was untimely filed.[1] We reverse and remand.
 
 DISCUSSION
 
 2
 A. An employee must file an application for disability retirement benefits with the OPM before he is separated or within one year of separation. 5 U.S.C. Sec. 8337(b) (1988). The one-year time limit may be waived by OPM only for an individual who, at the time of separation, or within one year thereafter, is mentally incompetent. Id.; Parker v. Office of Personnel Management, 974 F.2d 164, 165 (Fed.Cir.1992).
 
 
 3
 Effective November 3, 1984, Tripp was removed from his position as Distribution Clerk with the United States Postal Service.[2] The OPM did not receive his application for disability retirement until September 16, 1991. Tripp did not dispute the untimeliness of his filing, but requested a waiver for mental incompetency. In support of his application for disability retirement, Tripp has produced evidence including a psychological evaluation performed in October 1984, a neuropsychological evaluation performed in October 1986, and statements of family and friends. The OPM denied the application for insufficient evidence of mental incompetency, and the MSPB affirmed for this same reason.
 
 
 4
 B. We must affirm a decision of the MSPB unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988). In French v. Office of Personnel Management, 810 F.2d 1118, 1120 (Fed.Cir.1987), we stated that the OPM and the MSPB should not set "a standard [for mental incompetency] impossible to satisfy," and held that the waiver statute may be satisfied "by one having some minimal capacity to manage his own affairs, and not needing to be committed."
 
 
 5
 In his opinion, the AJ held that the burden of producing evidence of mental incompetence and the burden of proving mental incompetence lay on the assertedly mentally incompetent applicant,[3] and that this burden may be satisfied only if medical evidence is produced in addition to any subjective opinions of family or friends. Because these statements of the law are not challenged in this appeal and do not affect the outcome, they are not now at issue.
 
 
 6
 C. The 1984 evaluation was detailed and thorough, and included a battery of psychological tests. During the evaluation, it took over an hour for the psychologist to make eye contact with Tripp. The report of the evaluation states that Tripp had a history of childhood sickness and learning disability, and was being treated for depression and blackout experiences. Tripp, a 43 year old male, stated that his work problems began after his parents moved to Florida and he began living alone. His parents returned from Florida in June 1984 feeling that he was "incapable of looking after his own interests," and that, in the context of a car sale or exchange to his financial disadvantage, "one of his female friends was attempting to influence him to his financial detriment." In the report, Tripp's overall intelligence quotient was stated to be about 80, which was regarded as unduly high and influenced by his good verbal skills. He had significant visual-motor and concentration difficulties, and problems with "abstract thought and judgment." Overall, he was described as a person who "attempts to avoid problems whenever possible" and "would be expected to use the defense mechanisms of denial as much as possible." By using catch phrases and cliches to help him when he does not know the appropriate responses to make, he "appears to be actively attempting to compensate on a social and emotional level for his cognitive deficits while recognizing his own inabilities as little as possible." The report recommended that because Tripp "is certainly unable to manage complex problems without outside intervention," he should continue to live with his sister and her husband, or they should arrange for him a group living situation. It further recommended "a neurological and neuropsychological evaluation to follow up on the presently documented cognitive deficits that are consistent with central nervous system dysfunction."
 
 
 7
 According to the report of the follow-up 1986 neuropsychological evaluation, Tripp had been previously diagnosed in documents as having "Atypical or Mixed Organic Brain Syndrome" with secondary depression. The results of the 1986 evaluation included findings of "significant cognitive losses due to neurological deficiencies" which validated "previously documented findings or suspicions of organic deficiencies," "[d]ifficulties with complex problem-solving skills," "inability to deal with changes," and "[d]ifficulties with bilateral (and simultaneous) processing of information." The psychologist found that Tripp's history indicated
 
 
 8
 a deteriorating condition and steady loss of functional abilities, most likely the result of an ongoing decline of physiological integrity. In the past, stability at home and at work helped Mr. Tripp to maintain a tenuous but functional facade of adaptability. However, with changes in life and additional stresses at work, Mr. Tripp's deteriorating condition surfaced, and his coping capacities diminished. The losses in secure relationships and the distrust developed from disappointing work experiences, added insult to injury to his weakening body functions, rendering him depressed and helpless. Mr. Tripp is currently extremely confused, knowing that something is wrong with him, but having no insight in regard to his condition.
 
 
 9
 The report summarized by stating among other things that Tripp was "depressed, helpless and autistically self-absorbed in his thoughts and actions" and "dependent on his family."
 
 
 10
 D. Despite this evidence, the administrative judge (AJ) found that the record "fails to establish that [Tripp] was ever rendered mentally incapacitated." The AJ did not mention the 1984 evaluation, but instead found evidence of Tripp's competence in a remark apparently made in 1984 by Tripp's personal physician to Tripp's sister that, living with her and the family, "with patience and understanding, William should have no problem in leading a normal and happy life." The AJ found that the October 1986 evaluation reported "significant cognitive losses due to neurological deficiencies," but dismissed this evidence as saying nothing about Tripp's mental competence from November 1984 to November 1985, the period in question. Finally, the AJ rejected statements from family and friends that William was unable to administer his personal affairs and that they had to aid him in doing so on the ground that such statements of incompetency are insufficient under MSPB law for a waiver in the absence of supporting medical evidence.
 
 
 11
 Even a cursory reading of the evidence in record clearly demonstrates that the AJ's characterization of that evidence, which formed the basis for the AJ's finding that Tripp had not produced evidence of mental incompetency, was arbitrary and capricious. The AJ totally disregarded the 1984 evaluation. Despite the AJ's statement to the contrary, the 1986 evaluation clearly discusses and is relevant to Tripp's history of mental inabilities.[4] The statement by Tripp's family physician to Tripp's sister is wholly without context and is insignificant in relation to the substance of the 1984 and 1986 evaluations and other evidence of record. Furthermore, the statement that Tripp can lead a normal life so long as he receives patience and understanding strongly suggests that Tripp needed an unusual amount of assistance and points toward mental incompetency, not competency. Tripp indisputably produced medical evidence documenting that he had only a "minimal capacity to manage his own affairs," French, 810 F.2d at 1120. Furthermore, because Tripp produced medical documentation supporting his claim of incompetency, the AJ's dismissal of corroborating statements of incompetency by family and friends was in error.
 
 
 12
 The OPM argues without record support that Tripp's mental competency was evidenced by the fact that, with assistance, he applied for Social Security benefits and appealed his removal from the Postal Service. In view of Tripp's undisputed evidence of organic dysfunction and mental incompetency which included cognitive difficulty in working on more than one problem at a time, we are not persuaded the bare fact that these assisted actions took place demonstrates that Tripp himself had more than a minimal capacity to manage his own affairs.
 
 
 13
 Accordingly the decision of the MSPB is reversed and the case is remanded with instructions to order the OPM to allow Tripp to file his application for disability retirement.
 
 
 
 [1]
 The May 25, 1993, initial decision of an administrative judge became the final decision of the board on August 25, 1993, when the board denied Tripp's petition for review
 
 
 [2]
 From the materials presented on appeal it appears that Tripp was removed for tardiness and difficulty in taking directions after having worked 16 years
 
 
 [3]
 But see French, 810 F.2d at 1119, 1120 ("We hold that it is patently unreasonable and fundamentally unfair to require or allow an incompetent to act as advocate...."; "[T]he OPM must ... take an active role in the determination of an incompetent's claim to waiver of the 1-year limitation under 5 U.S.C. Sec. 8337(b), which requires a high degree of care in dealing with the claims of the incompetent.")
 
 
 [4]
 Ironically, it appears the AJ did rely on the 1986 report as relaying the 1984 statement by Tripp's physician to Tripp's sister