Thomas J. FELZIEN, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 90–3445.

United States Court of Appeals, Federal Circuit.

April 17, 1991.

W. Craig James, Skinner, Fawcett & Mauk, Boise, Idaho, argued for petitioner.

Genevieve Holm, Atty., Commercial Litigation Branch, Department of Justice, of Washington, D.C., argued for respondent. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were Jaime Ramon, Gen. Counsel, Thomas F. Mayer, Asst. Gen. Counsel and Murray M. Meeker, Atty., Office of Personnel Management.

Before MAYER and MICHEL, Circuit Judges, and SMITH, Senior Circuit Judge.

OPINION

MAYER, Circuit Judge.

Thomas J. Felzien appeals the decision of the Merit Systems Protection Board affirming the Office of Personnel Management's denial of his claim for retirement credit as a "firefighter." No. SE08319010177 (May 24, 1990). We reverse and remand.

*Background*

From May 23, 1965 through July 2, 1977, Felzien worked as a Forest Electronics Technician for the United States Forest Service, Department of Agriculture. During his three and one-half years at the Clearwater National Forest in Idaho, his two and one-third years at the Sitgraves National Forest in Arizona, and his six and one-half years at the Gila National Forest in New Mexico, Felzien worked on hundreds of fires. Though his responsibilities grew as he moved from Clearwater to Sitgraves to Gila, at each location Felzien functioned primarily as a communications officer. Upon arriving at fire sites, he would design, install, and maintain communications systems that were both essential to extinguishing the fires and instrumental in assuring the safety of other firefighters. Indeed, while not directly attacking the fire, a communications officer like Felzien

could make a greater contribution to fire suppression than a front-line firefighter brandishing pick and shovel.

Communications systems included telephones, "handi-talkies," "repeaters" (electronic devices that transmit communications over rough terrain and long distances), and radios. The Forest Service acquired most of this equipment specifically for fighting fires; firefighting was the highest priority use of the equipment and most of it was stored in permanent fire caches. Felzien used the equipment throughout the year. In fall and winter, he maintained, repaired, and tested it; in spring, he trained other personnel to use it; and in summer, the fire season, he deployed it and maintained it in actual fire suppression efforts.

Felzien's summer duties were both hazardous and physically demanding. The communications systems had to be set up at fire locations, and this often entailed flying over the fires to specially design systems and decide where to place individual devices. Installing the devices was frequently the most dangerous aspect of the job, because they often had to be placed in precarious places accessible only by climbing towers or trees or negotiating mountainous terrain. On one occasion, for example, Felzien had to hang from a hovering helicopter to put a device on a mountain peak.

After Felzien installed a communications system, he typically worked out of a "spike camp," a staging camp between the fire line and the base camp. There he repaired and altered the system or its components as necessary. He also carried a pulaski *, shovel, and bucket in his truck, front-line firefighting implements which the Forest Service required anyone on or near the fire line to carry because of their continual exposure to danger. To minimize that danger and to maintain the physical abilities his job required, each spring Felzien, like other firefighters, was required to pass a physical fitness test. He also carried a

---

* A pulaski is a "single-bit axe with an adze-shaped grub hoe extending from the back." *Webster's Third New International Dictionary* 1839 (16th ed. 1971). It was invented by and named for Edward C. Pulaski, a twentieth century American forest ranger. *Id.*

"red card" that certified his skill and ability to perform firefighting duties.

Believing he was entitled to early retirement with an enhanced annuity because of his service as a firefighter, *see* 5 U.S.C. §§ 8331(21), 8336(c)(1), 8339(d)(1) (1988); 5 C.F.R. § 831.902 (1990), on June 30, 1988 Felzien asked the Forest Service for its opinion and recommendation. Notwithstanding his actual duties and the fact that the Forest Service had paid him largely from "fire dedicated" funding, the agency concluded that none of Felzien's service was creditable as "firefighting." It noted that none of his position descriptions "says or implies that [his] primary duty was firefighting," and "there is no evidence that he personally extinguished fires." It concluded that Felzien was no more a firefighter than other Forest Service employees—electronic technicians, aircraft mechanics, retardant mixers, and warehousemen—whose positions likewise "d[id] not expose them to the 'vigorous demands' of firefighting."

Felzien persisted and submitted his claim to OPM. It, too, denied the claim because there was no evidence that he personally extinguished fires or that he used the communications equipment other than to install and test it. OPM stressed that "coverage as a firefighter is restricted to those who actually engage in firefighting duties" and likened Felzien's service to that of a fire inspector, who maintains but does not also use fire extinguishers and sprinkler systems and therefore does not qualify as a firefighter. When, on reconsideration, OPM reiterated its rationale and reaffirmed its decision, Felzien appealed to the board.

The board noted at the outset that the statutory definition of "firefighter" in section 8331(21) must be strictly construed because it governs entitlement to special benefits. Slip op. at 9. The statute deems a "firefighter" an employee whose duties are "primarily to perform work directly connected with the control and extinguishment of fires *or* the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position." 5 U.S.C.

§ 8331(21) (emphasis added). The board conceded that the use of "the disjunctive does suggest that the term is not necessarily limited to its 'ordinary meaning' " of a person who combats fires. Slip op. at 8. However, because of the great deference owed OPM policies implementing the civil service retirement system, *see McDannel v. OPM*, 716 F.2d 1063, 1066 (5th Cir.1983), especially those of long standing, *see Seltzer v. OPM*, 833 F.2d 975, 977 (Fed.Cir. 1987), the board acquiesced in OPM's argument that the use of the disjunctive "was not particularly significant." Slip op. at 8. OPM asserted that since 1972, when Congress extended the preferential retirement treatment originally accorded FBI agents and law enforcement officers to firefighters, *see* Pub.L. No. 92–382, 86 Stat. 539 (1972), it has considered only those who physically combat fires—and who may incidentally or in the off seasons maintain and repair firefighting apparatus and equipment—to be "firefighters" within the meaning of the statute. Thus, for example, OPM does not credit the position of Mechanic (Crash Truck) because persons filling it do not engage in firefighting duties, are not exposed to hazard, and merely care for and maintain but do not use firefighting apparatus. Slip op. at 9.

In the event this statutory construction were incorrect, the board alternatively found that Felzien "set up and maintained communications systems and devices, but he did not himself actually use them in any of the various ways they were used to actually fight fires." *Id.* at 8. Since the statute clearly requires maintenance *and* use, the board concluded Felzien did not qualify. Finally, even if Felzien maintained and used the communications equipment, he did not qualify as a firefighter because that equipment is not the "firefighting apparatus or equipment" contemplated by the statute. *Id.* at 9. In the board's view, only equipment that is unique to firefighting counts under the statute. *Id.*

### Discussion

#### A.

■ Because "[t]he occupation of firefighting is among the most hazardous in

the world," H.R.Rep. No. 840, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2941, 2942 [House Report], Congress in 1972 extended the preferential retirement treatment previously accorded FBI agents and federal law enforcement officers to federal employees whose duties "are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment." *See* Pub.L. No. 92–382, 86 Stat. 539 (1972). The House Report explains that the law

> extend[s] the hazardous occupation provisions to those Federal firemen who primarily perform work directly connected with the control and extinguishment of fires, or the maintenance and use of firefighting apparatus and equipment.... [A]n individual determination of early retirement eligibility based upon the danger of the employee's duties will be made by responsible officials who have access to duty and personnel records. *No firemen who had not in fact been exposed to hazards over a 20–year period would be eligible for such preferential consideration.*

House Report at 2944 (emphasis added). Congress intended not only to reward employees who performed especially hazardous duties in the public interest, *see Ellis v. United States*, 610 F.2d 760, 764, 222 Ct.Cl. 65 (1979), but to "facilitate the maintenance of relatively younger and more vigorous firefighting forces throughout the Federal establishment." House Report at 2944.

The law allows any employee with at least 20 years of service as a law enforcement officer, a firefighter, or a combination of the two to retire at age 50 with an enhanced annuity. 5 U.S.C. §§ 8336(c)(1), 8339(d)(1). A "firefighter" is defined as an employee, the duties of whose position are primarily to perform work directly connected with [1] the control and extinguishment of fires *or* [2] the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

5 U.S.C. § 8331(21) (emphasis added) (codifying Pub.L. 93–350, § 2(b), 88 Stat. 355, 356 (1974)).** When Congress adopted this definition in 1974, it again noted the hazardous nature of firefighting but stressed instead the physical demands of the job.

The history of retirement legislation dealing with law-enforcement officers and firefighters shows Congressional intent to liberalize retirement provisions so as to make it feasible for these employees to retire at age 50. This intent has been based on the nature of the work involved and the determination that these occupations should be composed, insofar as possible, of young men and women physically capable of meeting the vigorous demands of occupations which are far more taxing physically than most in the Federal Service. They are occupations calling for the strength and stamina of the young rather than the middle aged. Older employees in these occupations should be encouraged to retire.

S.Rep. No. 948, 93d Cong., 2d Sess. 2, *reprinted in* 1974 U.S.Code Cong. & Admin. News 3698, 3699 [Senate Report].

The "firefighter" definition thus embodies Congress' concern about the hazards of the job on the one hand and its physical requirements on the other. In addition to covering employees engaged in "control

---

** OPM has by regulation classified creditable firefighting positions as "primary" or "secondary." 5 C.F.R. § 831.902. The former include positions whose duties are primarily to control and extinguish fires or maintain and use firefighting apparatus and equipment; the latter include supervisory and administrative positions into which an employee formerly in a primary position transfers. *See id.*

Felzien claims his Forest Service positions are creditable "primary" positions. Though he only worked for the Forest Service approximately twelve years, he believes he is entitled to take advantage of the early retirement provisions because he subsequently served some thirteen years with the Office of Aircraft Services, Department of the Interior—a position he claims is creditable as "secondary." *See* slip op. at 3 n. 1. We address only the creditability of his Forest Service positions.

and extinguishment," the type of front-line firefighting duties so obviously hazardous and physically demanding that they supply the ordinary meaning of "firefighting," *see Ellis*, 610 F.2d at 764, the definition includes employees who maintain and use firefighting apparatus and equipment. Their jobs may be less hazardous, or less obviously so, than those of their front-line peers, but Congress thought their activities sufficiently dangerous and strenuous to merit the same preferential retirement treatment.

It is obvious that OPM thinks otherwise. Though its regulation implementing section 8331(21) is identical to the statute in all relevant respects, *see* 5 C.F.R. § 831.902, in practice it substitutes an "and" for the "or" between the "control and extinguishment" and "maintenance and use" clauses. Before the board,

> [t]he OPM representative argued ... that the use of the disjunctive was not particularly significant, and that the language *"or* the maintenance and use of firefighting apparatus and equipment" merely recognizes the obvious fact that a firefighter can only fight fires when there are fires to fight. In between fires, a firefighter spends a great deal of time doing other things, primarily the maintenance and use of firefighting equipment.

At 900. Since Felzien did not claim to have personally and directly controlled and extinguished fires—he "candidly testified that he rarely, if ever, actually used the systems to perform actual fire suppression functions," *id.* at n. 13—it was of no consequence to OPM whether he maintained and used the communications equipment or whether the equipment qualified as "firefighting apparatus and equipment."

The board adopted OPM's erroneous construction. With a nod to a few traditional administrative law principles—that an agency's interpretation of a statute it is charged with administering is entitled to great deference, and that congressional inaction in view of a long-standing agency interpretation of which Congress is aware indicates congressional satisfaction with

that interpretation—the board concluded that OPM's interpretation "is not an unreasonable construction of the language." *Id.* at 8.

■ We think it is. It is contrary to Congress' intent both as apparent from the statute's plain meaning and as explained in the legislative history. Notwithstanding OPM's assertion to the contrary, "or" *means* "or": an employee can qualify either by controlling and extinguishing fires *or* by maintaining and using firefighting apparatus and equipment. The House Report does imply that employees must be exposed to some hazard to qualify even under the maintenance and use clause, but that does not collapse the two clauses into one. The Senate Report emphasizes the physical demands of most firefighting jobs, not the hazards they entail; accordingly, any reading of the statute that disqualifies an employee solely because he did not assume *enough* risk—that is, because he was not a front-line firefighter who personally controlled and extinguished fires—disregards one of the statute's primary purposes.

■ Moreover, the administrative law principles on which the board relied in upholding OPM's interpretation and which OPM, in turn, cites in support of the board's decision are simply inapplicable. Felzien does not challenge OPM's regulation and, in any event, the regulation does not interpret the statute. It is instead an almost verbatim reproduction of the definition set by Congress. Therefore *McDannel, McLean v. OPM*, 800 F.2d 254, 255 (Fed.Cir.1986), and *Baker v. OPM*, 782 F.2d 993, 994 (Fed.Cir.1986), are not germane. Each case addressed a challenge to an OPM regulation, and each regulation interpreted a statute by either supplying an omission or resolving an ambiguity.

A nonexistent interpretation obviously cannot be one of long standing, so *Seltzer* and *Money v. OPM*, 811 F.2d 1474, 1477 (Fed.Cir.1987), are similarly inapplicable. We are aware of no OPM rule or regulation, of long standing or otherwise, which specifies that communications officers like Felzien are not "firefighters." That OPM

previously has denied firefighter credit to employees filling the positions of electronic technicians, aircraft mechanics, retardant mixers, warehousemen, dispatchers, crash truck mechanics, and fire inspectors does not amount to a statutory interpretation that persons like Felzien also cannot qualify. Indeed, given our prior admonitions that the duties actually performed by the employee and not only the official position description determine benefit eligibility, *see Cole v. OPM,* 754 F.2d 984, 986 (Fed.Cir. 1985), *Ellis,* 610 F.2d at 765; *see also Little v. OPM,* 762 F.2d 962, 964 (Fed.Cir. 1985), we doubt that OPM could disqualify by rule or regulation all employees who hold a specific position. Stripped of its armor of undue deference, OPM merely invites us to defer to its decision in this particular case. We decline the invitation. The law prevents us from abdicating review, *see* 5 U.S.C. § 7703(c), and we would not in any event embrace a principle that rendered our role superfluous.

## B.

█ Felzien's duties of maintaining and using communications systems and equipment qualify him as a firefighter. There is no doubt that the communications equipment Felzien used is the type of "firefighting apparatus and equipment" contemplated by section 8331(21). The use to which the equipment is actually put, not the uses to which it could be put, is dispositive. The Forest Service acquired the equipment specifically for firefighting, stored most of it in fire caches, designated firefighting as its highest priority use, and actually used it to fight fires. That the equipment has other uses and therefore is not unique to firefighting, *see* slip op. at 9, is irrelevant. Were that the test, pulaskis, shovels, hoses, and buckets also would not qualify as firefighting equipment because all have uses unrelated to fighting fires.

█ We also are satisfied that Felzien "used" firefighting equipment in the sense intended by the maintenance and use clause. He need not "actually use [the equipment] in any of the various ways [it is] used to actually fight fires." *Id.* at 8.

Requiring him to do so effectively reads into the maintenance and use clause the limitations of the control and extinguishment clause. The clauses are independent; OPM cannot achieve indirectly, by narrowly construing "use," what the plain language of the statute does not allow—substituting an "and" for the "or" Congress deliberately used to link the two clauses. Felzien used the equipment for many purposes, if not directly to fight fires: he personally installed, tested, and maintained it and also trained others to use it. That is sufficient to constitute "use" within the meaning of section 8331(21).

Finally and most importantly, Felzien was exposed to precisely the types of hazards and physical demands Congress envisioned when it extended preferential retirement treatment to firefighters.

> His work was hazardous, in the sense that anyone on or near the fire line was exposed to danger, and because he often had to fly over the fire to design a system and position the individual devices. In addition, he climbed towers and poles with spurs and sometimes had to place devices in precarious places on mountainous terrain.

> The work was also physically demanding. Because he was required to go "on site" wherever the fire was, he often had to traverse rough terrain or climb steep mountains. Installation of devices in these locations was many times arduous. In addition, he had to carry heavy equipment and often worked long hours.

Slip op. at 5 (footnotes omitted). The board recognized "the evidence ... established that [Felzien's] work frequently involved arduous physical demands and continual exposure to potential hazards." *Id.* at 6.

In light of section 8331(21)'s plain meaning, its legislative history, and these findings, Felzien is entitled to retirement credit as a "firefighter" for each of his positions with the Forest Service. Because the board's contrary conclusion rests on legal errors, it cannot stand. *See* 5 U.S.C.

§ 7703(c); *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

### *Conclusion*

Accordingly, the decision of the board is reversed and the case is remanded for proceedings consistent with this opinion.

COSTS

Felzien shall have his costs.

REVERSED AND REMANDED.