**Elizabeth M. PARKER, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 92–3242.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1992.

Elizabeth M. Parker, submitted pro se.

Margaret L. Baskette, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent. With her on the brief, were Stuart S. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Martha H. DeGraff, Asst. Di-

rector. Also on the brief, were Vernon B. Parker, Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel and Jill Gerstenfield, Atty., Office of Personnel Management, of counsel.

Before MAYER, MICHEL and LOURIE, Circuit Judges.

MAYER, Circuit Judge.

Elizabeth M. Parker appeals the decision of the Merit Systems Protection Board, 52 M.S.P.R. 173 (1991), that her disability retirement annuity application was untimely. We reverse.

### Background

Elizabeth M. Parker was employed as a Psychiatric Nursing Assistant by the Department of Veterans Affairs (DVA) Medical Center in Little Rock, Arkansas, for over twenty years when, on November 12, 1988, she was separated from service on the ground that she was physically unable to perform her duties. On November 9, 1989, Parker obtained a packet containing disability retirement annuity application forms from the DVA. At this time, she asked when her application had to be filed with the Office of Personnel Management (OPM), and she was told by Lois Holcomb of the DVA Medical Center's personnel office that it needed to be postmarked within a year of her separation. Parker went promptly to the post office and mailed the application that day, but it did not arrive at OPM's Boyers, Pennsylvania, office until November 16, 1989.

The statute governing disability retirement annuities states, "A claim may be allowed under this section only if the application is filed with the Office [OPM] before the employee or Member is separated from the service or within 1 year thereafter." 5 U.S.C. § 8337(b) (1988). The statute permits waiver of the time limit only if the applicant is mentally incompetent. *Id.* OPM's accompanying regulation states, "An applicant for disability retirement must submit an application for retirement before separation from service or within one year after separation from service, but this time limit may be extended in the case

of an employee who is found to be incompetent," and, "An employee or Member who is retiring on account of disability shall file an application for annuity with OPM before his separation from the service or within 1 year thereafter." 5 C.F.R. § 831.501(a) & (c) (1992).

In January 1990, OPM informed Parker that it was denying her application as untimely because it was not received until more than one year after her separation from service had elapsed, and that therefore it was not filed within the period provided by statute and regulation. After reconsideration, OPM affirmed the denial of Parker's application as untimely. It rejected her arguments that she complied with the directions given her to postmark the application within the one-year period, and that she had a reasonable expectation the application would arrive within the one-year time period because she had until November 13 for the papers to reach OPM, which should have been sufficient time.

Parker appealed to the Merit Systems Protection Board. In the initial decision, the administrative judge reversed OPM's reconsideration decision, rejecting its argument that 5 C.F.R. § 831.501 "means the date received, whether it says it or not." He also rejected OPM's assertion of a "long-standing policy" of using the date of receipt as the filing date, finding instead that "the regulations are far from clear as to what constitutes a filing date for a disability retirement application." He pointed to OPM's inconsistent deadlines in other contexts for filing documents: at times requiring receipt and at other times requiring only a postmark before a given deadline.

On OPM's petition for review of the initial decision, the board reversed, concluding that there was "persuasive evidence below to support [OPM's] assertion that its long-standing policy has been to consider the receipt date as being the date that an application for disability retirement was filed." *Parker v. Office of Personnel Management,* 52 M.S.P.R. 173, 176 (1991). The board pointed to an affidavit created for the case by the Deputy Assistant Director of OPM's Office of Retirement Programs,

which stated, "It is OPM's long-standing policy to interpret 'filing' as date of receipt by OPM." *Id.* The board also observed that it owed deference to OPM's interpretation of the statute.

On this appeal, Parker argues that the statute does not define filing as date of receipt and that "OPM's stated policy of using date of receipt is ambiguous and not always true." She argues, further, that "[i]n the regulations where date of receipt is the filing date, it is made clear," and that, "OPM's policy is not written nor is it a part of the regulations."

### Discussion

In *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), the Supreme Court said, "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." If it exercises this authority, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. at 2782; *see also Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Thus, by enacting regulations, departments and agencies inform the public of their statutory interpretations, and the cases counseling deference recognize these efforts at putting a "gloss" on statutes by regulation or by interpretive activities on the public record. *See, e.g., Chevron,* 467 U.S. 837, 104 S.Ct. 2778; *Udall,* 380 U.S. at 4, 85 S.Ct. at 795 ("the Secretary has consistently construed both orders not to bar oil and gas leases; moreover, this interpretation has been made a repeated matter of public record"); *Davis v. Office of Personnel Management,* 938 F.2d 1283, 1285 (Fed.Cir. 1991); *True v. Office of Personnel Management,* 926 F.2d 1151, 1154 (Fed.Cir. 1991).

*Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988), contrasted established agency interpretations to which deference is due with post-hoc rationalizations of agency actions to which deference is not due. "We have never applied the [*Chevron* principle] to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." And, further, "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Id.* at 213, 109 S.Ct. at 474. That in *Bowen* it was appellate counsel rationalizing an agency action, while here it is a line official who is trying to justify OPM's position is a distinction without a difference. The same result obtains: post-hoc rationalizations will not create a statutory interpretation deserving of deference. The board's reliance on the conclusory, unsubstantiated affidavit produced for this case is misplaced. It is insufficient to establish the existence of a regular, long-honored policy of public record.

OPM's argument that it consistently requires that applications be received within one year is also deflated by inconsistent regulations. Some require that applications be received within a deadline, *e.g.,* 5 C.F.R. § 831.109(e)(1) (1992) ("A request for reconsideration must be received by OPM within 30 calendar days from the date of the original decision"); *id.* § 831.-621(f)(2) ("Any modification ... must be in writing and received in OPM no later than the date provided for applications"), while others merely require that an application be postmarked within a deadline, *e.g., id.* § 831.1304(b) ("a request for reconsideration ... must be postmarked within 30 calendar days"). Of course, these provisions do not pertain to Parker's application, but they illustrate the absence of uniformity in filing requirements. Thus the board was off the mark when it said that OPM "consistently requires in various regulatory provisions that submissions be received by OPM by a certain date." 52 M.S.P.R. at n. 1. The cited regulations also show that OPM can readily communicate to the public how it defines a deadline. We, of course, imply no criticism of the inconsistent provisions. But the lack of uniformity makes it essential that the require-

ments of each regulation be set out explicitly.

We do not quarrel with the board's observation that "Congress ... has specifically sanctioned the use of a receipt date for the filing of a submission. *See, e.g.,* 5 U.S.C. § 8339(k)(2)(A), which provides that an election for a survivor annuity must be 'a signed writing *received* [by OPM] within 2 years after such employee ... marries....' " 52 M.S.P.R. at n. 1. This illustrates the value of saying explicitly what is required. But it does not help in interpreting what Congress meant when it merely used the ambiguous word "file," and it is entirely irrelevant to the question of whether OPM has a long-standing policy of interpreting "filed" to mean "received" under section 8337(b). In the face of the perfunctory affidavit attesting to an alleged "long-standing policy," the front page of the forms packet Parker was given, which, of course, is not a regulation, stated, "Your application for disability retirement must be received by [OPM] within one year after the date of your separation. (see item 5 under 'Eligibility')." But the referenced item 5 says, "You ... must apply ... within one year." At the same time the personnel office informed Parker that she need only have her application postmarked within one year. Apparently, even among personnelists there was disagreement about the requirement. With the statute and the regulation inscrutible, the forms and the verbal instructions inconsistent, and the alleged practice of OPM unknown, Parker's prompt mailing was sufficient.

In *Felzien v. Office of Personnel Management,* 930 F.2d 898 (Fed.Cir.1991), we declined to credit OPM's regulation which merely parroted the language of the statute it implemented. At issue there was a law providing for an enhanced annuity to those who qualified as "firefighters," 5 U.S.C. § 8331(21) (1988), which defined a firefighter as:

> an employee, the duties of whose position are primarily to perform work directly connected with [1] the control and extinguishment of fires *or* [2] the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

(emphasis added). OPM's implementing regulation, 5 C.F.R. § 831.902 (1990), was identical to the statute, also using the disjunctive "or." But, in practice, OPM ignored the "or" and required an employee to meet parts [1] *and* [2]. Because the regulation was "an almost verbatim reproduction of the definition set by Congress" instead of an interpretation of that statute, the cases counseling deference to regulations were not pertinent to our analysis. 930 F.2d at 902. In those cases "each regulation interpreted a statute by either supplying an omission or resolving an ambiguity." *Id.; see McLean v. Office of Personnel Management,* 800 F.2d 254, 255 (Fed.Cir.1986); *Baker v. Office of Personnel Management,* 782 F.2d 993, 994 (Fed. Cir.1986). We concluded,

> We are aware of no OPM rule or regulation, of long standing or otherwise, which specifies that communications officers like Felzien are not "firefighters." That OPM previously has denied firefighter credit to employees filling the positions of electronic technicians, aircraft mechanics, retardant mixers, warehousemen, dispatchers, crash truck mechanics, and fire inspectors does not amount to a statutory interpretation that persons like Felzien also cannot qualify.... Stripped of its armor of undue deference, OPM merely invites us to defer to its decision in this particular case. We decline the invitation. The law prevents us from abdicating review, *see* 5 U.S.C. § 7703(c), and we would not in any event embrace a principle that rendered our role superfluous.

*Felzien,* 930 F.2d at 902. Likewise here, OPM's regulation, 5 C.F.R. § 831.501(a) & (c), ("must submit" and "shall file") parallels the language of section 8337(b) ("filed"); it offers no interpretive guidance.

This is not a case of government estoppel foreclosed by *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). We do not

suggest that the government is estopped because Parker relied on erroneous advice from a government employee. What we do suggest, indeed hold, is that Congress used a word, "filed," which admits of at least two constructions: Parker's "postmarked," and OPM's "received." Because we conclude that OPM has not properly or publicly announced its construction, Parker cannot be penalized so long as she meets the statute, which she has. Put otherwise, until OPM properly and fully sets out its interpretation of 5 U.S.C. § 8337(b), an applicant will meet the statute by either lodging her papers with OPM within one year, or displaying a postmark proving they were mailed within one year.

In the absence of meaningful guidance, substantial evidence of a consistent policy, either internally applied or publicly announced, and in accordance with our prescription in *Felzien*, that, "A nonexistent interpretation obviously cannot be one of long standing," 930 F.2d at 902, we do not defer to OPM.

### Conclusion

Accordingly, the decision of the board is reversed.

REVERSED.