Robert A. PERSKE, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 93–3511.

United States Court of Appeals,
Federal Circuit.

June 2, 1994.

W. Craig James, Skinner, Fawcett & Mauk, Boise, ID, argued for petitioner.

Jeri Kaylene Somers, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With her

on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Bryant G. Snee, Asst. Director. Also on the brief were Lorraine Lewis, Gen. Counsel and Murray M. Meeker, Atty., Office of Personnel Management, of counsel.

Before ARCHER *, Chief Judge,
NEWMAN and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Robert A. Perske petitions for review of the July 29, 1993 decision of the Merit Systems Protection Board, Docket No. SE–0831–89–0052–B–2, affirming a decision of the Office of Personnel Management (OPM) denying Perske's application for an enhanced retirement annuity based on his service as a federal firefighter. We reverse and remand.

## BACKGROUND

■ Under the Civil Service Retirement Act (CSRA) an employee is entitled to an enhanced retirement annuity if he is separated from service after the age of 50 and has served as a federal firefighter for 20 years. See 5 U.S.C. §§ 8336(c)(1), 8339(d)(1) (1988). For purposes of receiving credit for firefighter service under the CSRA, a "firefighter" is defined as "an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position." 5 U.S.C. § 8331(21) (1988); see also 5 C.F.R. § 831.-902 (1993). Creditable firefighter service may thus be accrued in either of two ways: direct involvement in firefighting activity or service in a supervisory or administrative position following transfer from such a firefighting position. The OPM's regulations, enacted pursuant to its authority under 5 U.S.C. § 8347 (1988) to prescribe regulations to carry out the CSRA, refer respectively to such service as "primary" and "secondary" positions, a secondary position being either supervisory or administrative. See 5 C.F.R. § 831.902.

■ Pursuant to regulation, an employee may receive credit for service in a secondary position if he is transferred from a primary position to a secondary position without a break in service exceeding three days ("transfer requirement"). 5 C.F.R. § 831.-904(a)(1) (1993). The transfer requirement, a prerequisite to receiving credit for service in a supervisory or administrative position, requires a showing that the employee moved directly from a primary to a supervisory or administrative position. Once the transfer requirement has been satisfied, however, there is no requirement that subsequent service be continuous.[1] Accordingly, an employee who has met the transfer requirement may receive credit for all subsequent qualifying secondary service regardless whether there is a break in that subsequent service.

Perske was an employee of the United States Department of Agriculture Forest Service from June 25, 1953 until his retirement on January 31, 1983. On March 5, 1987, Perske applied to the OPM for an enhanced retirement annuity based on his service as a federal firefighter. Perske's career consisted of eight different periods of service. It is not disputed that his first position as a Fire Control Aide in the Siskiyou National Forest was a primary position. Perske was formally promoted to the position of Fire Control Assistant, his second position, in December of 1954, but actually assumed the duties of that position approximately eight months earlier, in April of that year.

Perske asserted that his second position was a supervisory position within the mean-

---

* Chief Judge Glenn L. Archer, Jr. assumed the position of Chief Judge on March 18, 1994.

1. Under the OPM's regulations there is a requirement that "the employee ha[ve] been continuously employed in secondary positions since transferring from a primary position without a break in service exceeding 3 days...." 5 C.F.R. § 831.904(a)(2) (1993). However, "[t]his re-quirement for continuous employment in a secondary position applies only to voluntary breaks in service beginning after January 19, 1988." 5 C.F.R. § 831.904(b) (1993). Because Perske retired in 1983, he did not have any "voluntary breaks in service beginning after January 19, 1988" and the requirement of continuous employment is therefore not ·applicable here.

ing of the CSRA and that he met the transfer requirement either in April of 1954, when he actually undertook the duties of that position, or in December of 1954, upon his formal promotion, when he moved from a primary to a supervisory position.[2] Perske argued that the remainder of his service in his third through eighth positions was supervisory and that he therefore had at least 20 years of creditable firefighting service entitling him to an enhanced retirement annuity.

The OPM denied Perske's application, finding that he failed to meet the transfer requirement, and the board affirmed.[3] On Perske's first appeal to this court, we vacated the board's decision on the ground that its application of the transfer requirement was not in accordance with law. We held that the board erred in requiring a formal transfer to a supervisory position and we remanded for further fact-finding concerning Perske's actual duties in his second position. *Perske v. Office of Personnel Management,* Appeal No. 92–3150, 1992 WL 315075 (Fed. Cir. Nov. 2, 1992). On remand, the administrative judge (AJ) again found that his second position was not supervisory and that Perske thus failed to meet the transfer requirement and was not entitled to an enhanced retirement annuity. In view of that determination, the AJ declined to decide whether the remainder of Perske's service was creditable. The AJ's decision became the final decision of the Board on July 29, 1993. *See* 5 C.F.R. § 1201.113.

### DISCUSSION

■ We review the board's legal conclusions to determine whether they are "in accordance with law," while we review its findings of fact to determine whether they are supported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1988); *Henry v. Department of the Navy,* 902 F.2d 949, 951 (Fed. Cir.1990). Perske asks us to reverse the board's conclusion that his second position,

that of Fire Control Assistant, was not supervisory and hold as a matter of law that he satisfied the transfer requirement when he moved from a primary position (Fire Control Aide) to a supervisory position (Fire Control Assistant) without a break in service exceeding three days. Perske further urges us to remand his case with instructions that the board review his claim for an enhanced annuity in its entirety.

■ In determining that Perske failed to satisfy the transfer requirement when he assumed the duties of Fire Control Assistant, the AJ held that that position was not a "supervisory position" within the meaning of the CSRA. The AJ began by stating that the meaning of "supervisory position" is not supplied either by the statute or by the OPM's regulations. Slip op. at 5. The AJ, relying on the "casual usage" of that term and its meaning under the National Labor Relations Act, *see* 29 U.S.C. § 152(11) (1988), concluded that a supervisory position is one in which the employee has "clearly moved away from direct fire involvement and into management" and has responsibility "over many of the matters which are normally associated with a true supervisor [such as] hiring, evaluation, and discipline of employees." Slip op. at 5–7. The AJ concluded that Perske's duties as Fire Control Assistant were not supervisory because Perske, as a work leader or crew boss at the fire scene, was directly involved with firefighting and his activities did not pertain to management.

The AJ's conclusion that a regulatory definition of supervisory position is lacking is incorrect. The OPM has expressly defined that term in its regulations as one "whose primary duties are as a first-level supervisor of . . . firefighters in primary positions." 5 C.F.R. § 831.902. A primary position is defined as one involving duties "directly connected with controlling and extinguishing fires or maintaining and using firefighter ap-

---

2. For purposes of this appeal, it is immaterial which of these alternatives is correct because, as long as his second position was supervisory, the transfer requirement was satisfied in either case.

3. The OPM denied Perske's application on the bases that his claim was barred under the doc-

trine of laches and he did not have the requisite 20 years of firefighter service, in part because he failed to satisfy the transfer requirement. The board reversed the OPM's determination of laches and affirmed the OPM's decision on the merits.

paratus and equipment." *Id.* The regulatory scheme thereby defines a supervisory position as one pertaining to the "first-level" supervision of those directly involved in fighting fires.

■ While the government concedes that the board erred in ignoring the regulatory definition of supervisory position, it asserts that this error was harmless because the board's interpretation was consistent with the OPM's regulatory definition. We disagree. The AJ's interpretation of a supervisory position is contrary to the OPM's definition of that term in its regulations.

The regulations recite both supervisory and administrative positions. A supervisory position involves "first-level" supervision of primary firefighters and does not require managerial activities. An administrative position, on the other hand, is defined as one concerning "executive, *managerial*, technical, semiprofessional, or professional" duties. 5 C.F.R. § 831.902 (emphasis added). While most supervisory positions may in fact have some management duties, the fact that the controlling regulatory scheme specifies both supervisory and administrative positions, the latter including, *inter alia*, management duties, makes clear that the supervisory category does not require management duties. The OPM's regulatory scheme thereby provides that service in either an administrative or a supervisory position is creditable, irrespective of management duties, as long as the transfer requirement is satisfied.

In the instant case, the issue is whether Perske's second position was in the supervisory, not the administrative, category. Perske was not required to establish that his duties had "clearly moved away from direct fire involvement and into management," as the AJ concluded, but only that he served as a "first-level" supervisor of primary firefighters. Contrary to the board's conclusion, a position which involves oversight of other firefighters and serving as a crew boss in charge of fire crews is a supervisory position within the meaning of the OPM's regulations.

■ Having determined the meaning of a supervisory position, we next address the evidence relating to whether the second position of Fire Control Assistant was in fact supervisory. We have held that entitlement to credit for service as a firefighter must be determined on the basis of actual duties performed, as well as by the grade level or by the official position description. *See Nuss v. Office of Personnel Management,* 974 F.2d 1316, 1318–19 (Fed.Cir.1992); *Felzien v. Office of Personnel Management,* 930 F.2d 898, 903 (Fed.Cir.1991); *Cole v. Office of Personnel Management,* 754 F.2d 984, 987 (Fed.Cir. 1985). Accordingly, the controlling facts for purposes of ascertaining whether the position of Fire Control Assistant is primary or supervisory are those pertaining to the actual duties performed by Perske. *See Nuss,* 974 F.2d at 1318–19.

Perske presented evidence before the board to establish that his duties as Fire Control Assistant were supervisory, including affidavits of John Mattoon, Perske's supervisor; Wayne Spencer, a member of Perske's fire crew during the time in which Perske served as Fire Control Assistant; and Perske himself. Perske testified that, as Fire Control Assistant, he directly supervised fire control and prescribed burning activities as directed by the District Ranger.

Perske's testimony was corroborated by a memo from Mattoon to Perske dated April 27, 1954, the approximate date on which Mattoon assigned Perske the duties of Fire Control Assistant, in which Mattoon defined Perske's new responsibilities. Under the heading "Fire Control," Perske's duties included the *"supervision"* of the prevention guards; *"supervis[ion]"* of the training of the detection system, lookouts, guards, patrols and cooperators; *"supervision"* of all district fire equipment; and *"supervision"* of burning jobs (emphasis added). Mattoon testified in an affidavit dated October 31, 1986 that Perske served as a "Crew Boss" of firefighting crews, trained fire lookouts, oversaw general maintenance of fire caches within the district, and supervised fire crews involved in slash burning before and after the peak fire season. Mattoon stated that following Perske's formal promotion to the position of Fire Control Assistant, Mattoon relied upon Perske for both the supervision

of fire control activities and actual fire suppression.

Additionally, Spencer attested in an affidavit dated November 20, 1986 that he served on a fire crew supervised by Perske which fought numerous fires under Perske's supervision and that Perske served as his "Crew Boss" during the 1955 season to clear and maintain trails for fire access. Spencer stated that "[a]s a line firefighter . . . [he] looked to and relied upon Mr. Perske with regard to the necessary supervisory decisions which were required to be made in the course of [ ] fire suppression activities." Spencer further stated that during the summer of 1955 "[he] regularly looked to and relied upon Mr. Perske as the first line Fire Control Supervisor within the Illinois Ranger District."

In contrast to Perske's significant evidence pertaining to his actual duties as Fire Control Assistant, the OPM's evidence was directed not to Perske's actual duties, but to material purporting to establish that positions at grade levels five and six, Perske's grade levels while serving as Fire Control Assistant, are generally considered primary, not supervisory, positions. As set forth by the AJ, the OPM adduced the testimony of a "Personnel Management Specialist" that "grade six and below positions are almost universally primary, while seven and above tend to be secondary." Slip op. at 7–8. The OPM also relied on a letter from the Civil Service Commission dated June 2, 1978 classifying various firefighter positions as primary or secondary and establishing, according to the OPM, that positions at grade six and below are generally classified as primary while those positions at grade seven and above are generally supervisory.

The OPM's evidence, directed solely and generally to the grade levels of the position of Fire Control Assistant, is not a sufficient basis for assessing whether *Perske's* second position was supervisory. *See Nuss,* 974 F.2d at 1318–19; *Felzien,* 930 F.2d at 903. The only evidence pertaining to Perske's actual duties was that adduced by Perske, all of

which establishes that his "primary duties" as Fire Control Assistant involved the "first-level" supervision of primary firefighters. In light of the uncontroverted evidence of what Perske actually did, we hold that Perske's second position was supervisory within the meaning of the CSRA. *See* 5 C.F.R. § 831.-902. Accordingly, Perske satisfied the transfer requirement when he moved from his first primary position to his second supervisory position. Perske is thus entitled to firefighter credit for service as a primary firefighter in his first position and as a supervisory firefighter in his second position.

Finally, we deem it necessary in the interest of judicial economy to review the AJ's conclusion that Perske was not entitled to credit for his third position.[4] In so concluding, the AJ found that Perske's third position was neither a primary nor a supervisory firefighting position, but one related to timber management. We review that finding to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (citation and quotes omitted), "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* at 488, 71 S.Ct. at 464.

■ In finding that Perske's third position was not in the firefighting field, the AJ relied on the title of the position (Timber Sales Officer), the official position description, Perske's description of the position on a 1967 employment application, and Perske's performance rating for 1956 which, according to the AJ, rated Perske on 11 tasks, only one of which was related to firefighting activity.

As with Perske's second position, the title of his position and the official position description are not controlling in ascertaining what Perske actually did in his third position. *See Felzien,* 930 F.2d at 903. Moreover, the

---

4. The AJ made this finding in his October 25, 1991 decision. Although Perske then appealed this finding, we did not review it in our prior decision in view of our conclusion that additional fact-finding pertaining to the transfer require-

ment was necessary. On remand, however, the AJ essentially adopted his prior finding with respect to position three. *See* Slip op. at 8 n. 7. Accordingly, that finding is subject to our review now.

AJ's reliance on Perske's employment application is of limited relevance since it may have been tailored to fit the job for which Perske was then applying and the AJ stated that he lacked access to the referenced application at the time of his decision. Furthermore, Perske's performance rating applied to only one of the nearly two and one half years he served in his third position.[5] As such, the performance rating cannot by itself support the AJ's finding that his overall work was not in the firefighting field.

Controverting that *indirect* evidence, however, was the testimony of Perske, Mattoon, and Spencer, all of which was directed to *Perske's duties* while in his third position. The AJ stated that Perske testified that fire-related activities occupied about seven months per year of Perske's time in his third position, and that such activities included salvaging flammable material, fire control, fire inspection, making fire plans for each timber sale area, inspecting for fire hazards, conducting fire training, maintaining fire control on slash burns, and direct firefighting. Slip op. at 7. Perske stated in his affidavit that while he was in his third position he was required to live on station with rapid access by phone or radio for dispatching of initial forces to fires or escaped slash burns.

Mattoon, Perske's supervisor during Perske's service in his third position, testified that during fire season Perske functioned as a fire crew boss and engaged "almost entirely [in] fire prevention and fire inspection work." Mattoon stated that he relied on Perske "not only for his fire suppression and post-suppression activities[,] but, of equal or greater importance, with regard to his supervisory abilities when dealing with others in the area of pre-suppression, suppression[,] and post-suppression activities." In addition, the AJ noted Spencer's testimony that during the 1955 fire season Spencer engaged in fire trail maintenance and firefighting under Perske' supervision and considered Perske to be the "first line Fire Control Supervisor" for the district. *See* slip op. at 8.

In view of the established rule that it is actual duties that control in determining whether an individual has served as a fire-fighter under the CSRA, *see Felzien,* 930 F.2d at 903, Perske's evidence relating to his actual duties in his third position not only "detracts from [the] weight" of the evidence relied upon by the AJ in making his finding, *see Universal Camera,* 340 U.S. at 488, 71 S.Ct. at 464, it overwhelms it. We conclude based on the record as a whole that a reasonable fact-finder could not find that Perske's third position was not in the firefighting field and that the board's finding to the contrary was thus not supported by substantial evidence. Because Perske has satisfied the transfer requirement, it is not pertinent whether his third position was primary or supervisory, because Perske is entitled to credit in either case. Perske therefore is entitled to firefighter credit for his service in his first through third positions, extending from June 25, 1953 through January 11, 1958, or approximately four and one half years. Having satisfied the transfer requirement, Perske now need only establish that he served in creditable firefighting positions for the balance of the twenty-year requirement.

We believe it is time for an end to the board's piecemeal decision-making with regard to Perske's claim for an enhanced retirement annuity. *See* 5 C.F.R. § 1201.-111(b)(1) (1993) ("Each initial decision will contain ... [f]indings of fact and conclusions of law upon all the material issues of fact and law presented on the record[.]"). On remand the board is instructed to decide Perske's claim for an enhanced annuity in its entirety and thus determine finally whether Perske is entitled to firefighter credit for his service in his fourth through eighth positions.

## CONCLUSION

We reverse the board's conclusions that Perske failed to meet the transfer requirement and that his service in his third position was not creditable. Perske is entitled to credit for his service in his first, second, and third positions. The case is remanded for the board to determine whether the remainder of Perske's service is creditable and thus whether Perske is entitled to an enhanced retirement annuity.

---

5. Perske served in his third position from September 25, 1955 through January 11, 1958.

COSTS

Costs to Perske.

*REVERSED AND REMANDED*