# United States Court of Appeals for the Federal Circuit

06-3180

CRAIG R. LETZ,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

W. Craig James, Mauk & Burgoyne, of Boise, Idaho, argued for petitioner.

Allison Kidd-Miller, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Todd M. Hughes, Assistant Director.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3180

CRAIG R. LETZ,

Petitioner,

v.

DEPARTMENT OF THE INTERIOR,

Respondent.

_____

DECIDED:  January 22, 2007

_____

Before MICHEL, Chief Judge, RADER, and LINN, Circuit Judges.

RADER, Circuit Judge.

The Merit Systems Protection Board (Board) affirmed the United States Department of the Interior's (Agency's) decision denying Mr. Craig Letz's firefighter retirement service credit (FF credit) during two periods of his career.  Letz v. Dep't of Interior, Docket No. DE0842050189-I-2 (M.S.B.P. Jan. 17, 2006) (Initial Decision).  The Board found that Mr. Letz did not timely file his application for FF credit for his service between January 24, 1991 and October 11, 1997, and between March 24, 2002 and June 15, 2002.  Initial Decision, slip op. at 2, 5.  Because the Board correctly applied its regulation on timeliness, this court affirms.

I.

Under the Federal Employees Retirement System (FERS), a qualified law enforcement officer or firefighter who completes twenty years of service may retire upon

attaining fifty years of age.  See 5 U.S.C. § 8412(d) (2000).  These qualified employees receive an enhanced annuity, but are subject to mandatory early retirement and larger salary deductions during employment.  See 5 U.S.C. §§ 8415(d), 8425(b) (2000); 5 C.F.R. § 842.804 (2006).  An employee can qualify for the enhanced annuity either (1) by serving in a position that has been approved for firefighter or law enforcement officer service credit (FF/LEO credit), or (2) by applying for enhanced annuity service credit with a showing of qualification for such credit.  See 5 C.F.R. §§ 842.801-842.806 (2006).  Mr. Letz must prove that he completed three years of qualifying first-line service as a precondition to entering a qualifying secondary position. 5 C.F.R. § 842.803(b)(iii) (2006).   Service in both "rigorous" and "secondary" firefighter positions is creditable toward enhanced firefighter retirement. 5 U.S.C. § 8401(14) (2000).   A "rigorous" firefighter position is defined as a position in which the duties "are primarily to perform work directly connected with the control and extinguishment of fires; and . . . are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals."  5 U.S.C. § 8401(14) (2000); 5 C.F.R. § 842.802 (2006).  A "secondary" firefighter is "an employee who is transferred directly to a supervisory or administrative position after performing [rigorous firefighter] duties . . . for at least 3 years."  Id.  However, service in secondary positions is not creditable if the employee has not "completed 3 years of service in a rigorous position, including any such service during which no FERS deductions were withheld."  5 C.F.R. § 842.803(b)(1)(ii) (2005).

Mr. Letz enrolled in the FERS on August 14, 1994, when he accepted a Forestry Technician position appointment. He appeals the Agency's FF credit coverage determinations for his work in the following positions:

Date of Appointment | Position
--- | ---

- August 14, 1994     GS-0462-06 Forestry Technician position
- March 19, 1995     GS-0462-06 Forestry Technician position
- April 16, 1995     GS-0462-07 Forestry Technician position
- October 12, 1997     GS-0462-08 Forestry Technician position
- October 11, 1998     GS-0462-09 Forestry Technician position
- July 4, 1999     GS-0401-09/11 Fire Management Officer position
- March 24, 2002     GS-0401-11 Forestry Technician/Fuels Specialist position
- June 16, 2002     GS-0401-12 Fire Use Manager position

During Mr. Letz's service between August 14, 1994 and July 3, 1999, the Agency had not yet made coverage determinations for those positions. Mr. Letz admits that when enrolled in FERS, he was aware that his position was not a covered position for FF/LEO credit. Furthermore, the Agency found that for all positions, Mr. Letz was both aware of the FF/LEO credit program and that he was not paying the required extra one-half percent contribution into the FF/LEO retirement program.

On January 17, 1997, Mr. Letz submitted his first and only application for FF/LEO benefits. In this application, he sought coverage for positions he held between August 14, 1994 and January 17, 1997. Thereafter, he did not file any additional applications for FF credit for any other positions. The Agency, nonetheless, also considered whether Mr. Letz might have been eligible for FF credit at any time during his service.

On October 5, 1998, the Agency determined that the positions Mr. Letz held between March 19, 1995, and October 11, 1997, should be covered as

secondary/administrative positions. Mr. Letz did not receive any notice of this coverage determination for these positions because he was no longer serving in those positions.

On January 20, 1999, the Agency determined that the positions Mr. Letz held between October 12, 1997 and July 3, 1999, should also be covered as secondary/ administrative. The Agency provided Mr. Letz with a "Statement of Understanding" about its coverage determination because he was an incumbent of one of the newly covered positions.

On May 6, 1999, Mr. Letz challenged these coverage determinations. On February 17, 2005, the Agency issued its final decision. The agency noted that he did not meet the six-month filing deadlines set forth in 5 C.F.R. § 842.804(c) or the special one-time, November 1, 1995, filing deadline. Because Mr. Letz failed to demonstrate that he was unaware of his coverage status or prevented from timely filing by circumstances beyond his control, the Agency concluded that his request for an eligibility determination was untimely. As for the positions he held from October 12, 1997 through July 3, 1999, however, the Agency concluded that the request was timely, but they were properly classified as secondary/administrative. Regardless, Mr. Letz was not eligible for FF/LEO credit for that time period because it was not preceded by three years of primary fightfighter service, as required by 5 U.S.C. § 8401(14) and 5 C.F.R. § 842.803(b)(ii).

Mr. Letz appealed to the Board. On January 17, 2006, the administrative judge (AJ) issued an initial decision, agreeing with the Agency that Mr. Letz failed to file a timely request, and that his untimeliness was not excused under 5 C.F.R. § 842.804(c). Initial Decision, slip op. at 2-3. Moreover, the Board found that there were no significant

changes in any of the pertinent positions. Id. at 3. This decision became final on February 21, 2006 because Mr. Letz did not petition for further review. Instead, Mr. Letz appealed to this court, which has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

Mr. Letz appeals the Board's Initial Decision denying his applications for FF credit arguing that he has no deadline to seek FF credit. Alternatively, he argues that the reason he missed the November 1, 1995 special deadline was because he did not know he needed to challenge the "coverage, or lack of coverage." He also argues that when the Agency determined, on October 5, 1998, to provide secondary coverage for the positions he held between March 19, 1995 and October 11, 1997 that this was a "significant change" in his position for which he should have been provided notice. Mr. Letz asserts that this determination providing secondary coverage was a "significant change" because it was a "retroactive bar" to his proving that "he had completed three years of qualifying first-line service as a precondition to entering a qualifying secondary position." Thus, because the Agency did not provide notice to him, he argues this was cause beyond his control that prevented him from filing a timely claim.

II.

The standard of review for appeals from a final order of the Board states:

> the court shall . . . hold unlawful and set aside any agency action, findings and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (2000). The applicable regulation for challenging an agency's FF/LEO credit coverage provides:

> If an employee is in a position not subject to the one-half percent higher withholding rate of 5 U.S.C. 8442(a)(2)(B), and the employee does not,

> within 6 months after entering the position or after any significant change in the position, formally and in writing seek a determination from the employing agency that his position is properly covered by the higher withholding rate, the agency head's determination that the service was not so covered at the time of the service is presumed to be correct. This presumption may be rebutted by a preponderance of the evidence that the employee was unaware of his or her status or was prevented by cause beyond his or her control from requesting that the official status be changed at the time the service was performed.

5 C.F.R. § 842.804(c) (2006) (emphases added). This court has affirmed that this regulation, setting forth a six-month time limit for FF/LEO credit application, is a reasonable interpretation of the enabling statute, 5 U.S.C. § 8412 (d). See Fitzgerald v. Dep't of Def., 80 M.S.P.R. 1, 9, 11 (1998), aff'd, 230 F.3d 1373 (Fed. Cir. 1999). This court also affirmed that such an interpretation additionally serves the significant policy goal of preventing employees from postponing appeals for many years and thus creating fiscal uncertainties and inevitable losses of evidence. Id. Thus, if the employee does not request FF/LEO credit within the six-month period specified in section 842.804(c) or show good cause for missing that deadline, the agency's determination receives a presumption of correctness. Bingaman v. Dep't of Treasury, 127 F.3d 1431, 1441 (Fed. Cir. 1997).

## III.

Mr. Letz acknowledges three distinct deadlines triggering his obligation to seek a coverage determination "formally and in writing." Mr. Letz had an obligation to seek, formally, within six months after entering each new position. Mr. Letz also had an obligation on November 1, 1995, when the Agency created a special, one-time filing deadline. Finally, he could have sought credit within six-months of any significant

change in his positions, though Mr. Letz asserts that the six-month time bar does not apply to his situation.

As noted, Mr. Letz could have applied for FF credit at any time he moved into, or within six months of entering into, a new position. He did not take these opportunities.

Furthermore, the Agency created a special, one-time deadline of November 1, 1995 that allowed employees to seek coverage for positions when such application would have otherwise been time-barred. Thus, on November 1, 1995, Mr. Letz could have applied for FF credit coverage for the positions he entered on dates between April 14, 1994 and April 16, 1995. Mr. Letz also did not take this opportunity. Therefore, substantial evidence supports the Board's determination that Mr. Letz missed the "within six months of entering a new position" deadline and the November 1, 1995 special deadline to file an application for or protest FF credit coverage. Initial Decision, slip op. at 3.

With respect to applying for credit after "a significant change in the position," this phrase does not refer to a significant change in FF/LEO coverage. A "significant change in position" means a significant change in the type of work or duties of the position, see Bingaman, 127 F.3d at 1442, not a change in the agency's determination of the type of retirement credit or coverage available for that position.

Nonetheless, Mr. Letz is correct that on October 5, 1998, the Agency certified the coverage of Mr. Letz's positions, and this was retroactive to February 11, 1993. That determination foreclosed Mr. Letz from attaining FF credit because he could not show that he had met the threshold of three years of primary firefighting service. This determination, however, did not affect the duties or responsibilities of his positions at all.

Thus, this determination did not amount to a "significant change in position" within the terms of the regulation that would afford Mr. Letz a six-month window of protest. The Board correctly determined that the October 5, 1998 Agency determination was not a "significant change in position" that opened a new application or protest opportunity. Thus, this court affirms the Board's interpretation of the terms "or" and "significant change in position" in the regulation.[1] Accordingly, the Board also correctly determined that no "significant changes" in Mr. Letz's positions occurred.

Mr. Letz also contends that the Agency had a duty to notify him of changes affecting his FF credit coverage in the context of this case. This court's case law, specifically Bingaman, 127 F.3d at 1441, has foreclosed this argument. In Bingaman, this court held that the Department of Treasury (Department) had no affirmative duty to advise employees on requests for law enforcement officer (LEO) credit. Id. at 1442, see also Doyle v. Dep't of Veterans Affairs, 80 M.S.P.R. 640, 644 (1999). As a result, the Department could not be estopped from applying, against employees, the requirement that they make formal, written request for such credits within six months of either taking a position or having a significant change in position. Id. The holding of Bingaman also applies to employees requesting FF credit. Furthermore, the record shows that Mr. Letz was well aware of his non-firefighter (or non-FF credit) status. He testified he was aware that neither his initial position in 1994 nor his position in 1997 was covered positions. The record also shows that he knew he was not paying the required extra

---

[1] Mr. Letz further argues that the six month deadline set forth in 5 C.F.R. § 842.804(c) does not apply to a request for coverage after a significant change in position. His reliance upon Felzien v. Office of Personnel Management, 930 F.2d 898, 902 (Fed. Cir. 1991), is misplaced because that decision does not refer to proper interpretation of 5 C.F.R. § 842.804(c), the regulation at issue here. Instead, Felzien interprets an unrelated statute.

one-half percent contribution during his non-covered service. Thus, the Board correctly found that Mr. Letz "presented no evidence that he was prevented by cause or circumstance beyond his control from filing a timely appeal for firefighter/LEO benefits at the time the service in any of the pertinent positions was performed." Initial Decision, slip op. at 3.

In conclusion, this court affirms the Board decision that Mr. Letz's application for FF/LEO benefits was time-barred, and that he has not shown good cause for waiver of the deadline.

## COSTS

Each party shall bear its own costs.

## AFFIRMED